IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ACMA USA, INC.

        Plaintiff/Counter-Defendant,        Case No. 3:08CV071

v        HON. HENRY E. HUDSON

SUREFIL, LLC,

        Defendant/Counter-Plaintiff.

## COUNTERCLAIM

NOW COMES Defendant Surefil, LLC, ("Surefil"), by counsel, and by way of its Counterclaim against Plaintiff, ACMA, USA, Inc., ("ACMA"), says:

1. ACMA is a Virginia corporation with its principal place of business located at 501 Southlake Boulevard, Richmond, VA 23236-3078 in Chesterfield County, Virginia. This location lies in the venue of the Richmond Division of this court.

2. Surefil is a Michigan limited liability company with its principal place of business located at 4560 Danvers Drive SE, Kentwood, Michigan (the "Surefil Facility").

3. None of the members of Surefil is a citizen or resident of Virginia.

4. This Counterclaim is proper under Fed.R.Civ.P. 13.

## RELEVANT FACTS

5. Surefil is a premium manufacturing contract manufacturer dedicated to filling personal care and OTC liquids, lotions, creams and gels, including low alcohol containing products.

6. This controversy arises from ACMA's and/or its affiliate corporation, ACMA S.p.a.'s, sale to Surefil of certain industrial machinery, specifically an ACMA M05 28/12 – 150 filler and capper machine (the "Machine").

## THE PURCHASE CONTRACT AND RELATED LETTER OF CREDIT

7. On or about September 29, 2006, ACMA alleges it offered to sell the Machine and other equipment to Surefil for $820,519.00 by a written quotation identified as MVIN2K5N189 Rev. 7.1.1 (the "Quotation"), (Paragraph 9, ACMA's Bill of Complaint). A copy of this Quotation is attached as **Exhibit 1**.

8. The Quotation from ACMA S.p.a. noted on the "Project Data" sheet that Surefil had requested that the Machine have a speed of 240 bottles per minute.

9. In response to the Quotation, Surefil submitted a Purchase Order (#100254), dated September 29, 2006, which references as an item "M05 28/12-150" with a unit cost of $820,519.00. A copy of the Purchase Order is attached as **Exhibit 2**.

10. The Purchase Order expressly stated that Surefil would not pay any amounts in addition to the Purchase Order, "regardless of job changes, scope additions, or scope alterations."

11. ACMA thereafter generated an Order Confirmation, N. 326 Rev. 0, dated October 6, 2006, that confirmed, *inter alia*, the price and the speed requirement of the Machine. A copy of the Order Confirmation is attached as **Exhibit 3**.

12. ACMA and/or ACMA S.p.a. and Surefil agreed that the delivery date for the Machine would be February 15, 2007.

13. The delivery date and speed requirement were important factors for Surefil.

14. Surefil thereafter submitted its first payment in the amount of $273,506.33, dated October 16, 2006, which ACMA acknowledges in its Complaint (Paragraph 13).

15. In January 2007, ACMA S.p.a. informed Surefil that it would not be able to deliver the Machine by February 15, 2007.

16. Surefil's Purchase Order Number 100254 was replaced and amended over the course of time.

17. Copies of replacements to and amendments of Surefil's Purchase Order are included in **Exhibit 2** and are incorporated by reference.

18. The various amendments to Surefil's Purchase Order culminate in Surefil's Purchase Order 100272-D.

## **PROBLEMS WITH THE MACHINE**

19. ACMA S.p.a. failed to timely deliver the Machine to the Surefil Facility by March 30, 2007.

20. Since delivery and installation of the Machine, Surefil has experienced significant problems with the Machine (the "Problems").

21. The Problems include, but are not limited to, the use of bushings that were undersized (the "Undersized Bushings") causing the Machine to overheat and cease operation, thus stopping production on Line 2 and requiring replacement of parts.

22. The Undersized Bushings were replaced by ACMA in approximately October 2007.

23. The Problems also include, but are not limited to, those identified in an October 31, 2007 memorandum from Craig Courts of Surefil to John Bowerman of ACMA, a copy of which is attached as **Exhibit 4**.

24. The Problems also include, but are not limited to, the following:

   a. Capper continuously fails after three to four weeks of operation. Through October 31, there had been seven failures of capper motors.

3

b. Motor 8 only had a single turn motor rather than a dual turn motor.

c. Wiring channels in the Machine are too small and have sharp edges that cut the wires and cause shorts.

d. Poor air vacuum/suction.

e. Hardware fault in the power supply or the max4 driver board that requires the replacement of hardware.

f. Improper vacuum design.

g. A nonfunctioning Omron camera.

h. Inadequate power surge protection.

25. The Machine continues to exhibit various Problems, including, but not limited to, the following:

a. A single turn motor needs to be replaced.

b. The capper is not properly plumbed for air.

c. When the Proface digital screen on line 2 shows "OLA Rejector Fault" the system needs to be rebooted. Generally the fault locks out the controls—hence the need to reboot. Sometimes, if the controls are not locked out, the system rejects all the bottles and once again the need to reboot.

d. Defective programmable logic controller (PLC).

e. Current mounting and orientation of OMRON capper camera causes camera vibration and, therefore, malfunction.

f. Camera software needs to be replaced or corrected as suggested by ACMA staff member Mr. Saccani after his most recent visit to Surefil.

g. Lack of technical documentation regarding "cap sorter bowl" and "cap elevator".

h. Lack of documentation regarding use of "Libra System", "Capper System" and "Reject System". By way of further illustration only, these Systems, which are part of the Machine, are supposed to be able

to permit Surefil to capture weight data, but Surefil is unable to do so without adequate documentation.

      i. Some hinge bar fingers in the "Reject System" are not functional.

      j. Tubing for wires is not properly finished and causes tears in wire insulation.

      k. Filler Head number 13 does not properly control the filling of bottles.

26. The Machine is an integral part of Surefil's major production line ("Line 2").

27. Some of the Problems have been so significant that they have resulted in the Machine being rendered inoperable for extended periods of time.

28. When the Machine has been rendered inoperable, Surefil's production on Line 2 has been halted.

## INSTALLATION CONTRACT

29. ACMA installed and commissioned the Machine at Surefil's facility in Grand Rapids, Michigan (the "Installation").

30. Installation was not included in the Quotation or the Purchase Order.

31. ACMA invoiced Surefil for the Installation separate and apart from the Machine.

32. The parties agreed, separate and apart from the parties' agreement regarding Surefil's purchase of the Machine, for ACMA to provide the Installation.

33. Any limitation of certain kinds of damages which may be alleged by Plaintiff to be contained in the contract between the parties for the purchase of the Machine is inapplicable to claims based on defects in ACMA's performance of the Installation.

34. Upon information and belief, each of the Problems is the result of one or more of the following, all of which are ACMA's responsibility: defective design, defective manufacturing, defective parts, and defective Installation.

35. Defects in the Installation include, but are not limited to, the following:

   a. Load cells were wired improperly and caused Machine failure and stopped production on Line 2.

   b. Bowl pressure sensor was improperly installed and failed July 31, 2007, causing the Machine to be inoperable for approximately one week and stopping production on Line 2.

   c. Omron capper camera was improperly wired and installed causing malfunction.

   d. Sensors for caps were improperly specified and installed.

   e. ACMA failed to install the vacuum for the Filler-In feed Conveyor.

   f. Change parts were improperly commissioned.

   g. Potentially improper installation and configuration of power failure and surge protections.

36. By way of illustration only, Surefil offers the following examples, which are not intended to be an exhaustive list of harms suffered by Surefil as a result of the Problems.

   a. The Machine (and consequently Line 2) was inoperable for 2.5 days the weekend before October 31, 2007, and ACMA's technicians were unable to resolve the problem with the Machine.

   b. The Machine (and consequently Line 2) was inoperable from January 30, 2008 until February 15, 2008.

   c. The Machine still does not run at full capacity.

37. On or about January 24, 2008 ACMA provided Surefil with the invoice for a second payment installment in the amount of $296,782.68, extending the due date for Surefil to make such payment from January 2, 2008 to January 25, 2008. A true copy of this invoice and cover letter therefore is attached as **Exhibit 5**.

38. ACMA sent staff to Surefil's facility to attempt to resolve the Problems that caused the Machine to not function starting January 30, 2008, but the Machine still does not operate properly.

## COUNT I – BREACH OF PURCHASE CONTRACT

39. Surefil incorporates the allegations of the preceding paragraphs by reference, as if fully restated herein.

40. ACMA breached the Contract between it and Surefil regarding the purchase of the Machine by delivering a defective Machine that did not comply with the terms of the Quotation and Purchase Order.

41. Surefil has suffered damages as a result of ACMA's breach, including, but not limited to, costs for parts and labor for repair and replacement of Machine components, lost production and profits, and other consequential damages.

## COUNT II – BREACH OF INSTALLATION CONTRACT

42. Surefil incorporates the allegations of the preceding paragraphs by reference, as if fully restated herein.

43. ACMA breached the contract between it and Surefil regarding the Installation by providing defective materials and labor.

44. Surefil has suffered damages as a result of ACMA's breach, including, but not limited to, costs for parts and labor for repair and replacement of Machine components and lost production and profits, and other consequential damages.

## COUNT III – PROMISSORY ESTOPPEL—PURCHASE CONTRACT

45. Surefil incorporates the allegations of the preceding paragraphs by reference, as if fully restated herein.

46. ACMA communicated to Surefil that it was going to provide goods and services in accordance with the Quotation and Order Confirmation.

47. ACMA intended that Surefil would rely on its promise to provide goods and services in accordance with the Quotation and Order Confirmation.

48. Surefil reasonably relied on ACMA's statement that it was performing based on the terms of the Quotation and Order Confirmation.

49. In reasonable reliance on ACMA's promised performance, Surefil did not make arrangements with anyone else for provision of the goods and services that were the subject of the Quotation and Order Confirmation and which were integral and necessary to Surefil's operation of its business.

50. It would be inequitable for ACMA to later deny its obligation to provide goods and services according to the Quotation and Order Confirmation.

51. ACMA failed to provide goods and services according to the Quotation and Order Confirmation.

52. ACMA's failure to provide goods and services according to the Quotation and Order Confirmation caused Surefil to suffer damages.

**COUNT IV – PROMISSORY ESTOPPEL—INSTALLATION CONTRACT**

53. Surefil incorporates the allegations of the preceding paragraphs by reference, as if fully restated herein.

54. ACMA communicated to Surefil that it would provide goods and services needed to complete the Installation in a commercially reasonable manner.

55. ACMA intended that Surefil would rely on its promise to provide goods and services needed to complete the Installation in a commercially reasonable manner.

56. Surefil reasonably relied on ACMA's statement that it was providing goods and services needed to complete the Installation in a commercially reasonable manner.

57. In reasonable reliance on ACMA's promised performance, Surefil did not make arrangements with anyone else for providing goods and services needed to complete the Installation in a commercially reasonable manner, which was integral and necessary to Surefil's operation of its business.

58. It would be inequitable for ACMA to later deny its obligation to provide goods and services needed to complete the Installation in a commercially reasonable manner.

59. ACMA failed to provide goods and services needed to complete the Installation in a commercially reasonable manner.

60. ACMA's failure to provide goods and services needed to complete the Installation in a commercially reasonable manner caused Surefil to suffer damages.

## COUNT V – BREACH OF GOOD FAITH

61. Surefil incorporates the allegations of the preceding paragraphs by reference, as if fully restated herein.

62. ACMA had a duty of good faith in carrying-out its Contract with Surefil.

63. ACMA has ignored such duty or failed to act with good faith.

64. Surefil has been and continues to be damaged as a result of ACMA's breach.

## COUNT VI – NEGLIGENT MISREPRESENTATION

65. Surefil incorporates the allegations of the preceding paragraphs by reference, as if fully restated herein.

66. ACMA made false representations of material facts to Surefil regarding issues including, but not limited to, the quality and condition of the Machine and Installation.

67. ACMA's representations were false when they were made.

68. ACMA owed Surefil a duty of care.

69. ACMA's representations were made without reasonable care.

70. Surefil acted in reliance on ACMA's false representations.

71. Surefil was justified in relying on ACMA's representations.

72. ACMA's misrepresentations caused Surefil to suffer damages exceeding $25,000.00.

## COUNT VII – INNOCENT MISREPRESENTATION

73. Surefil incorporates the allegations of the preceding paragraphs by reference, as if fully restated herein.

74. ACMA made false representations of material facts to Surefil regarding issues including, but not limited to, the quality and condition of the Machine and Installation.

75. ACMA's representations were false when they were made.

76. Surefil acted in reliance on ACMA's false representations.

77. Surefil was justified in relying on ACMA's representations.

78. ACMA's misrepresentations caused Surefil to suffer damages.

79. Surefil's injury benefited ACMA in ways including, but not limited to, ACMA's profits from Surefil's purchases.

## COUNT VIII – BREACH OF WARRANTIES

80. Surefil incorporates the allegations of the preceding paragraphs by reference, as if fully restated herein.

81. ACMA impliedly warranted that the Machine was of merchantable quality and fit for its intended and ordinary use, and for the general and particular purposes for which it was designed, manufactured, marketed, distributed, assembled, and sold.

82. The Machine did not confirm to those implied warranties made by ACMA in that it was defectively designed, manufactured and/or assembled, a result of which caused Surefil economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counter-Plaintiff Surefil, LLC, by counsel, demands judgment against ACMA USA, Inc., for all sums that may be adjudged against ACMA in favor of Surefil, including but not limited to direct and consequential damages suffered as a result of ACMA's acts and omissions. Additionally, Defendant/Counter-Plaintiff demands judgment against ACMA USA, Inc., for Surefil's costs, attorney fees, and such other relief, legal or equitable, as the Court deems just.

SUREFIL, LLC,

By /s/ Bruce M. Marshall
        Of Counsel

Bruce M. Marshall, Esquire (VSB #18093)
Christine A. Williams, Esquire (VSB #47074)
DuretteBradshaw, PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
bmarshall@durrettebradshaw.com
cwilliams@durrettebradshaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2008, I will electronically file the foregoing Counterclaim with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

W. R. Baldwin, III, Esquire
W. Reilly Marchant, Esquire
Marchant, Honey & Baldwin
5600 Grove Avenue
Richmond, Virginia 23226


       /s/   Bruce M. Marshall