IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ACMA USA, INC.

   Plaintiff/Counter-Defendant,     Case No. 3:08CV071

v                    HON. HENRY E. HUDSON

SUREFIL, LLC,

   Defendant/Counter-Plaintiff.

## AFFIDAVIT OF WILLIAM B. HUNT

State of Michigan )
        )ss
Kent County   )

William B. Hunt, being sworn, states as follows:

1. I have personal knowledge of the facts stated in this affidavit and, if sworn as a witness, I am competent to testify to them.

2. I am the Chief Executive Officer and an owner of Surefil, LLC ("Surefil"), a Michigan limited liability company. Surefil does not maintain any type of facility in Virginia and is not authorized to conduct business in Virginia. None of Surefil's members are citizens of Virginia.

3. Surefil is a relatively new company, having only begun commercial operations in May 2006. It is a contract manufacturer whose business includes manufacturing and bottling automotive, home care, and personal care liquids, lotions, creams and gel products for our customers. Specifically, for many of its customers, Surefil is provided with a customer's

1

formulated liquid or a "recipe" and is then shipped raw materials and bottles. Surefil then makes the customer's product, places it in the bottles, and packages the filled bottles for distribution and sale by the customer. Surefil's revenue is derived from mixing the raw materials to make the product and then filling bottles for its customers. Its competitive advantage is the speed at which it can turn the raw materials into the finished product.

4. In the summer of 2006, Surefil had a single production line and was in negotiations with several customers that could potentially give Surefil very large orders. As these negotiations advanced, Surefil began looking at options to establish a second production line that would allow it to service these potential new customers and their demands for timeliness, efficiency, and quality of the turnaround.

5. In 2006, Surefil and ACMA USA, Inc. ("ACMA") entered into discussions regarding how ACMA, an equipment manufacturer, could help Surefil fill higher volumes of orders. Surefil and ACMA, agreed for Surefil to purchase from ACMA an M05 28/12-150 automatic filler capper monoblock with various related equipment (the "Machine"). A crucial part of this agreement was to allow Surefil to pay for the Machine over a period of time from an increased cash flow created by the large orders the Machine would be able to fill. Surefil agreed to the payment terms based on ACMA's representations of the Machine's capabilities and the timely delivery and putting the Machine into service.

6. Surefil received a Quotation. Surefil sent a Purchase Order to ACMA. Surefil and ACMA had a contract for ACMA to provide to Surefil the Machine. Through the course of their dealings Surefil and ACMA had various telephone conferences, emails, and at least one face-to-face meeting in Michigan. No one from Surefil ever travelled to Virginia to negotiate and/or finalize the contract between the parties. Most conference calls and emails were between Surefil

(in Michigan) and ACMA's affiliated company in Italy. Only a handful of conference calls and emails involved representatives from Surefil (participating from Michigan) and ACMA (participating from Virginia) but most of the time when Virginia representatives were on the phone, the call also included the ACMA affiliate (participating from Italy).

7. While the Machine was being manufactured, I sent an employee of Surefil, Robert Farmer, to Italy to observe the Machine. Surefil also sent sample bottles, caps, and materials to Italy for testing with the Machine. The Machine was delivered to Surefil directly from Italy and it has never been in the state of Virginia.. Specifically, Surefil hired a company called Macal, Inc. to pick up the Machine from Chicago, Illinois and transport it to Surefil in Michigan. Macal., Inc. also uncrated and staged the Machine in Surefil's facility.

8. Once the Machine was installed at Surefil's facility, Surefil immediately began to experience numerous, various, repeated, and significant problems with its operation. Surefil notified ACMA of these problems with the Machine, but ACMA repeatedly blamed Surefil for the problems.

9. The dispute of the parties has resulted in the above-captioned litigation in the United States District Court for the Eastern District of Virginia. ACMA sued Surefil in this Court and Surefil is required to bring its claims against ACMA in this action. However, litigation in the Eastern District of Virginia is extremely inconvenient for Surefil and for several important witnesses that are no longer under Surefil's control.

10. By way of example, the following persons are material witnesses whose testimony Surefil may require for Surefil to have a fair presentation of its claims and defenses in this litigation.

a. Martin Chism is a former Surefil employee whose employment was terminated by Surefil. Mr. Chism was present in initial discussions with ACMA regarding the purchase of the Machine in September 2006 and participated throughout the process of the manufacture and purchase of the Machine. Mr. Chism participated in telephone conferences and email exchanges that are summarized and discussed throughout Plaintiff's complaint. Mr. Chism is no longer an employee of Surefil and Surefil believes Mr. Chism remains a resident of West Michigan. Surefil does not believe that Mr. Chism would be willing to voluntarily travel to Virginia. Surefil has no control over Mr. Chism to compel his travel to Virginia nor does Mr. Chism have any obligation to travel to Virginia to help Surefil. Mr. Chism is a critical witness as to the content of negotiations between Surefil and ACMA and, importantly, as to the various agreements that comprise the contract between Surefil and ACMA with respect to the Machine. In addition to the cost and inconvenience of travel and lodging to testify in Virginia, such travel would require Mr. Chism to be away from his current vocation, potentially for a substantial period of time.

b. Robert Farmer is a former Surefil employee who is no longer employed by Surefil. Mr. Farmer actually went to Italy during the final stages of preparing the Machine for shipping to the United States and is alleged by ACMA to have been trained and to have accepted the Machine on behalf of Surefil. Mr. Farmer is specifically identified and discussed throughout Plaintiff's complaint. Mr. Farmer is no longer an employee of Surefil and

Surefil believes Mr. Farmer remains a resident of West Michigan. Surefil does not believe that Mr. Farmer would be willing to voluntarily travel to Virginia. Surefil has no control over Mr. Farmer to compel his travel to Virginia nor does Mr. Farmer have any obligation to travel to Virginia to help Surefil. Mr. Farmer is an important witness as to the condition of the Machine from the time of its installation, testing conducted by ACMA, the extent of training and assistance provided by ACMA. He, finally, can testify about ACMA's efforts to install the Machine, an effort for which ACMA claims it is entitled to thousands of dollars. In addition to the cost and inconvenience of travel and lodging to testify in Virginia, such travel would require Mr. Farmer to be away from his current vocation, potentially for a substantial period of time.

c. Peter Gray is a former Surefil employee who terminated his employment with Surefil. Mr. Gray was the vice president of Sales and played an important role in establishing, building, and maintaining customer relationships on behalf of Surefil and is potentially an important witness as to the effect on important and valuable customer relationships were affected by the defects with the Machine. Mr. Gray had direct conversations with important customers whose orders and potential future business was virtually assured until production failures caused by defects in the Machine caused those customers to discontinue their relationship with Surefil. Mr. Gray is no longer an employee of Surefil and Surefil believes Mr. Gray remains a resident of West Michigan. Surefil does not

believe that Mr. Gray would be willing to voluntarily travel to Virginia. Surefil has no control over Mr. Gray to compel his travel to Virginia nor does Mr. Gray have any obligation to travel to Virginia to help Surefil. Mr. Gray is a key witness as to the damages suffered by Surefil and the cause of those damages as a result of the defects in the Machine. In addition to the cost and inconvenience of travel and lodging to testify in Virginia, such travel would require Mr. Gray to be away from his current vocation, potentially for a substantial period of time.

d. Progressive Handling, Inc. is a company based in Allendale, Michigan that is in the material handling and system integration industry. Progressive Handling, Inc. participated in telephone conferences that are summarized and discussed throughout Plaintiff's complaint. Progressive Handling, Inc. is not affiliated with Surefil. Surefil does not believe that the applicable employees of Progressive Handling, Inc. would be willing to voluntarily travel to Virginia. Surefil has no control over those employees of Progressive Handling, Inc. to compel them to travel to Virginia. Furthermore, Progressive Handling, Inc. has no obligation to send employees to Virginia to help Surefil. Those employees of Progressive Handling, Inc. are important witnesses as to the various agreements that comprise the contract between Surefil and ACMA with respect to the Machine, including the content of the discussions alleged by ACMA in its complaint. In addition to the cost and inconvenience of travel and lodging to testify in Virginia, such travel would require Progressive Handling, Inc.

to divert staff away from his present business ventures, potentially for a substantial period of time.

  e. Macal, Inc. is a company based in Portage, Michigan that provides millwright and maintenance services. Macal, Inc. picked up the ACMA Machine in Chicago, Illinois, where ACMA shipped it, and transported it to Surefil's facility in Kentwood, Michigan where staff from Macal, Inc. uncrated and began the installation process for the Machine. Macal, Inc. is not affiliated with Surefil. Surefil does not believe that Macal, Inc. would be willing to send staff to Virginia. Surefil has no control over Macal, Inc. to compel travel of its employees to Virginia, nor does Macal, Inc. have any obligation to send employees to Virginia to help Surefil. Macal, Inc. is an important witness as to the shipping and condition of the Machine as well as the installation of the Machine. In addition to the cost and inconvenience of travel and lodging to testify in Virginia, such travel would require Macal, Inc. to divert staff away from his present business ventures, potentially for a substantial period of time.

11. The above-identified witnesses are crucial to Surefil's ability to defend the claims ACMA has against Surefil and to also pursue its claims against ACMA. Because the witnesses are either former employees or separate entities, Surefil lacks the control over these witnesses to compel them to travel to Virginia for a trial. Surefil's claims and defenses would be severely compromised without the ability to compel these witnesses to testify in this case.

12. To fully appreciate the role of Machine in Surefil's operations and the nature of the defects in the Machine, I believe it is very important for the jurors in this case to see the

Machine in its operating mode at Surefil's facility in Kentwood, Michigan. The Machine is the backbone of Surefil's production line and is immoveable. Because of the speed at which the Machine moves, the product the Machine produces, and the complex interaction of the Machine's parts and the assembly line, a videotaped presentation of the Machine would not capture the significance of the defects. By way of example only, a videotape or picture would not accurately show spilled liquids, such as clear shampoo and soap, when the Machine malfunctions. The Machine also has issues with heat build up, which would be lost in a picture or video. It is important for the jury to see Surefil's facility in order to understand how central of a role that Machine plays in its business.

Further your affiant saith not.

_____
William B. Hunt

Subscribed and sworn to before me
on _____ March 31_____, 2008.

_____
Vicie Daws
Notary public
State of Michigan, County of Kent
My commission expires: May 11, 2008
Acting in the County of Kent