IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ACMA USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08-CV-071–HEH |
| | ) | |
| SUREFIL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
### (Granting-in-Part and Denying-in-Part Plaintiff's Motion for Partial Summary Judgment and Denying Defendant's Motion in Limine)

This convoluted breach of contract action involves Surefil, LLC's ("Surefil")

purchase of a custom-built industrial machine from ACMA USA, Inc. ("ACMA USA")

and its Italian affiliate, ACMA S.p.A. ("ACMA S.p.A."). The case is currently before the

Court on two motions: Plaintiff ACMA USA's Rule 56 Motion for Partial Summary

Judgment (Dkt. 63) and Defendant Surefil's Motion in Limine to Exclude Evidence

Regarding the Purported Waiver of Any Warranties (Dkt. 52). Both parties have filed

memoranda of law in support of their respective positions. The Court will dispense with oral

argument because the facts and legal contentions are adequately presented in the materials

before the Court and argument would not aid in the decisional process. For the reasons

detailed herein, Plaintiff's Motion for Partial Summary Judgment will be granted-in-part

and denied-in-part and Defendant's Motion in Limine will be denied.

## I. Factual Background

### A. The Parties and the ACMA Machine

Defendant Surefil is a Michigan limited liability company who's principal business involves filling consumer containers with "liquids, lotions, creams and gels" for commercial manufacturers. Cntrclm. ¶ 5.  Plaintiff ACMA USA is a Virginia corporation who—together with its Italian affiliate, ACMA S.p.A.[1]—designs, assembles, and sells industrial machinery.  Compl. ¶¶ 7-11; Cntrclm. ¶¶ 7-8.  In late 2006, Surefil initiated discussions with ACMA USA and ACMA S.p.A. regarding the purchase of a "Monobloc filler and capper machine" (the "ACMA Machine").  Compl. ¶¶ 7-8.

The ACMA Machine at issue in this case is a complicated, custom-built apparatus designed to fill containers with liquids and gels at a high rate of speed. Cntrclm. ¶ 8. According to the parties, the ACMA machine, if functioning properly, should enable Surefil to fill between 240 and 300 bottles per minute. Cmplnt. ¶ 28.  Apparently, Surefil sought the machine to expand production capacity at its Michigan facility.  Cntrclm. ¶ 2.

### B. The Parties' Agreement

Following negotiations, ACMA S.p.A. issued a lengthy and detailed quotation (the "Quotation") to Surefil on September 29, 2006 offering to design, construct, and sell the Machine for $820,519. Cntrclm. ¶ 7; Compl. Ex. B.  That same day, Surefil responded by transmitting a purchase order (the "Purchase Order") to ACMA USA

---

[1]ACMA S.p.A. is not a party to this action.

2

accepting the offer. Compl. Ex. C. ACMA USA now claims that the Quotation,

Purchase Order, and an earlier letter sent to Surefil by ACMA S.p.A. (the "Bowerman

letter") constitute the entire agreement between the parties. Compl. ¶ 14. Surefil agrees

that both the Quotation and the Purchase Order are part of the parties contract but further

contends that the parties' agreement also includes a later confirmation (the "Order

Confirmation") sent by ACMA S.p.A.[2] to Surefil in response to the Purchase Order. Ans.

¶ 14; Cntrclm. ¶11.

Both the Quotation and the Order Confirmation contain an identical "Terms &

Conditions" section. *Compare* Compl. Ex. A *with* Cntrclm. Ex. 3. Included in both

sections is a provision significantly limiting any damages available to Surefil and

disclaiming certain implied warranties. *Id.* Specifically, Sub-section 9, titled "Release

and Exclusion of Warranty," provides that "Seller shall not be responsible under any

circumstances for any direct, indirect, consequential, economic, special, incidental, or

other damages (including production losses or similar economic damages)" to Surefil.

Cntrclm. Ex. 1, Ex. 3. Sub-section 9 further provides that the ACMA Machine "is sold

'as is', and all implied warranties, including warranties of merchantability or fitness for a

---

[2]Despite Surefil's contention that ACMA USA is not a party to the agreement (and thus cannot enforce certain contract provisions), it appears that all parties considered ACMA S.p.A. and ACMA USA to be the same entity during negotiations. After receiving the Quotation issued by ACMA S.p.A., for example, Surefil addressed and transmitted its responsive Purchase Order to ACMA USA. Cntrclm. Ex. 2. But it was ACMA S.p.A.–not AMCA USA– who subsequently responded to this Purchase Order with its own Order Confirmation several days later. Cntrclm. Ex. 3. Moreover, the "Terms & Conditions" specified in the Quotation and agreed to by Surefil alternatively refers to "Seller," "ACMA USA," and "ACMA S.p.A., Bologna." Thus, it seems that the parties used ACMA USA and ACMA S.p.A. interchangeably during negotiations.

particular purpose are excluded." *Id.* Finally, Sub-section 9 generally limits the "Seller's . . . liability and responsibility" under the contract to the inspection, repair, and replacement of defective parts at the discretion of the "Seller." *Id.*

C. Construction, Installation, and Operation of the ACMA Machine

Surefil made the first of three required installment payments on the ACMA Machine via a check issued to ACMA USA on October 16, 2006. Compl. ¶13, Ex. D. ACMA S.p.A. proceeded to design and assemble the ACMA Machine at its factory in Italy. Compl. ¶ 23. ACMA USA avers that a Surefil representative visited the ACMA S.p.A. assembly plant where he observed and approved the ACMA Machine as constructed. Compl. ¶ 24. ACMA S.p.A. subsequently delivered and installed the ACMA Machine at Surefil's Michigan facility in the spring of 2007. *Compare* Compl. ¶ 25 *with* Cntrclm. ¶ 19. Problems quickly ensued.

According to Surefil, the ACMA Machine has never worked properly. Compl. ¶ 27. Even ACMA USA admits that Surefil has "experienced certain problems" with the ACMA Machine since spring 2007, though the company denies liability for the machine's defects. Surefil's counterclaim recites a litany of detailed and highly-technical issues with the ACMA Machine. *See* Cntrclm. ¶¶ 19-28. According to Surefil, these problems have "rendered. . .[the ACMA Machine] inoperable for extended periods of time," and have frequently required complete suspension of Surefil's production line. Cntrclm. ¶¶27-28. Surefil avers that the ACMA Machine's inability to function properly has

4

caused the company significant economic loss. Cntrclm. ¶ 41.

Beginning with the machine's installation and continuing until early 2008, ACMA USA worked with Surefil to provide $138,406.61 worth of parts and services on the ACMA Machine. Compl. ¶ 33; Def. Resp. at 5. Despite these efforts, problems with the ACMA Machine persisted. By December 31, 2007 the parties had reached an impasse, and Surefil began contemplating (and threatening) legal action. Compl. ¶ 29, Ex. I.

Because of the machine's malfunctions, Surefil refused to pay ACMA USA the second of three installment payments on the ACMA Machine, which was due January 25, 2008.[3] Compl. ¶¶ 31-32. Accordingly, ACMA USA commenced the instant action against Surefil, claiming that the second installment payment of $296,782.68 was "past due and owing without offset, defense [or] valid excuse." Compl. ¶ 38. In response, Surefil counterclaimed against ACMA USA, asserting several causes of action, including breach of contract and breach of warranty. Cntrclm. ¶¶ 39-81.

Since the inception of this litigation, Surefil has made numerous attempts to repair the ACMA Machine on its own. Def. Resp. at 6. To date, however, Surefil's efforts have been wholly unsuccessful, though Surefil represents that its engineers have identified the ACMA Machine's principal problem: a defective computer motherboard. Def. Resp. at 6. Surefil now claims that ACMA USA refuses to sell Surefil this motherboard, which is "proprietary . . . and can only be purchased from ACMA." Def. Resp. at 6.

---

[3] The third and final payment on the ACMA Machine was due October 3, 2008. Presumably, Surefil has refused to pay this payment as well.

5

Frustrated by its inability to operate the ACMA Machine, Surefil advised ACMA USA on September 5, 2008 that it was rejecting (or revoking its acceptance of) the ACMA Machine. Pl. Mem. Ex. L. In response, ACMA USA argues that Surefil's rejection–and/or revocation of acceptance–is improper as a matter of law because of the unreasonable delay between delivery of the ACMA Machine in the spring of 2007 and Surefil's rejection/revocation in early September, 2008. Pl. Mem. at 19.

D. Procedural History

With leave of the Court, both parties have since amended their respective pleadings to include several additional claims and defenses.[4] At a hearing held on October 16, 2008, the Court addressed a host of motions filed by both parties. Without objection by ACMA USA, the Court granted Surefil leave to amend both its Answer and its Counterclaim to aver that Surefil had rejected and/or revoked its acceptance of the ACMA Machine on September 5, 2008. The Court also granted ACMA USA leave to amend its complaint to add a claim of conversion against Surefil for wrongful retention of the ACMA Machine.

Beyond the motions considered at the October 16th hearing, ACMA USA also has filed the instant motion seeking partial summary judgment on Counts I and III of both its Complaint and Surefil's Counterclaim. Counts I and III of ACMA USA's complaint

---

[4]Surefil filed its Amended Counterclaim on October 29, 2008. Because Surefil's amendments did not alter Counts I and III, the Court assumes that ACMA USA's Motion for Partial Summary Judgment applies with equal force to Surefil's Amended Counterclaim.

charge that Surefil breached the parties agreement by refusing to pay both the second and third installment payments. Counts I and III of Surefil's counterclaim, in turn, aver that ACMA USA breached the parties' agreement by delivering a defective machine.

ACMA USA's Motion also seeks summary judgment on Count VIII of Surefil's Counterclaim, which avers that ACMA USA breached various implied warranties in the design, construction, and installation of the ACMA Machine and seeks economic and consequential damages. Summary judgment is appropriate, ACMA USA argues, because the parties' agreement clearly indicates that Surefil waived the warranties and remedies at issue in Count VIII.

Prior to the October 16th hearing, Surefil also filed its own Motion in Limine seeking to exclude all evidence at trial suggesting that Surefil waived any warranties when it contracted to Purchase the ACMA Machine. In support of this motion, Surefil argues that any warranty disclaimers contained in the parties' agreement are inoperative as a matter of law. Because Surefil's Motion in Limine requires the Court to decide the same legal issue as ACMA USA's Motion for Partial Summary Judgment on Count VIII of the counterclaim–to wit, whether the warranty disclaimers and damages waivers contained in the parties' agreement are legally effective–the Court addresses both motions in this Memorandum Opinion.

7

## II. Analysis

### A. Applicable Law

As Surefil correctly notes in its Response, the Court must first determine the applicable law that governs this dispute. District courts sitting in diversity must apply the conflict of laws rules of the forum state in which they sit—here, Virginia. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).[5] Under Virginia law, the substantive law of the place of contracting governs any contractual dispute.[6] *Fuisz v. Selective Ins. Co. of America*, 61 F.3d 238, 241 (4th Cir. 1995) (applying Virginia law). Virginia law defines the "place of contracting" as the location of the last act necessary to complete the contract. *Rahmani v. Resorts Int. Hotel, Inc.*, 20 F.Supp.2d 932, 934 (E.D.Va. 1998) (citing *Keco Indus., Inc. v. ACF Indus., Inc.*, 316 F.2d 513, 514 (4th Cir.1963)). Accordingly, the Court must apply the law of the forum where the last act necessary to form a mutually-enforceable contract between Surefil and ACMA USA occurred. *See Id.* at 935.

Under both Michigan and Virginia law, a contract for the sale of goods, such as the ACMA Machine, may be formed "in any manner sufficient to show agreement" by the parties, "including conduct by both parties which recognizes the existence of such a

---

[5]The Court notes at the outset that ACMA USA has chosen not to address the choice of law issue in this case, though it has had ample opportunity to do so. The Court thus must apply Virginia precedent to determine which law governs without the aid of Plaintiff's arguments.

[6]The motions presently before the Court present only issues of contract interpretation. Accordingly, the Court will refrain from deciding what law governs any tort claims advanced by the parties.

contract." Mich. Comp. Laws § 440.2204(1); Va. Code. § 8.2-204(1). ACMA S.p.A.,

located in Italy, made an offer to Surefil when it issued the 12-page Quotation on

September 29, 2006. *See* Compl. Ex. B. That same day, Surefil, located in Michigan,

responded to the highly-detailed Quotation with its own Purchase Order, thereby

accepting ACMA S.p.A.'s offer to design and construct the ACMA Machine. A contract

between the parties thus was formed when Surefil "[recognized] the existence of . . . a

contract" between the parties by accepting the Quotation at its Michigan facility. Mich.

Comp. Laws § 440.2204(1); Va. Code. § 8.2-204(1).

Because Surefil's acceptance, made at and transmitted from its Michigan facility,

was sufficient to "show agreement" between the parties, the last act necessary to form a

contract for the sale of the ACMA Machine occurred in Michigan. Accordingly,

Michigan is the "place of contracting" under Virginia's conflicts of law rules. *See*

*Klaxon*, 313 U.S. at 496. Michigan law–and Michigan's version of the Uniform

Commercial Code in particular–therefore governs the parties' contract for the sale of the

ACMA Machine.[7]

## B. The Parties' Contract

As an initial matter, the Court must consider which specific documents constitute

the parties' contract and which corporate entities are parties to the final agreement.

---

[7] In Count II of its Counterclaim, Surefil alleges that the parties entered into a separate contract for the installation of the ACMA Machine. The parties have provided the Court with no information regarding how, when, or where this parallel installation contract was formed. Due to this lack of information, and because the motions at bar do not require the Court to consider any installation contract between the parties, the Court declines to decide which law governs such an agreement.

### 1. *Documents Constituting the Parties' Contract*

ACMA USA correctly notes that the parties dispute which specific document comprise the parties' contract. In its Complaint, ACMA USA avers that the parties' contract consists of the Purchase Order, the Quotation, and the Bowerman letter. Compl. ¶ 14. Surefil denies that the parties contract is limited to these documents and avers instead that the Order Confirmation is also part of the parties' contract. Ans. ¶ 11; Def. Resp. at 10.

The Court need not decide which specific documents constitute the parties' full agreement at this stage of the case. The "Terms & Conditions" section of the Quotation includes the provisions at issue in this Motion which purport to limit Surefil's remedies and to disclaim certain implied warranties. As ACMA points out, the parties agree that their contract includes, at the very least, both the Quotation and the Purchase Order. Accordingly, the Court concludes that the parties' contract includes[8] the damage limitation and warranty disclaimer provisions contained in the Quotation.

### 2. *Parties to the Contract*

In its Response to the Motion for Partial Summary Judgment and in its Motion in Limine, Surefil argues that the "terms in the contract documents upon which ACMA USA is attempting to rely . . . run only in favor of . . . ACMA S.p.A." Def. Resp. at 9. Essentially, Surefil argues that ACMA S.p.A. is the real party to the contract and thus

---

[8]Whether this language is valid and enforceable by ACMA USA is another matter entirely..

only ACMA S.p.A.–but not ACMA USA–can enforce the damages limitation and warranty waiver provisions.  ACMA USA, Surefil contends, acted only as an agent for ACMA S.p.A. throughout the contracting process and therefore acquired no rights under the parties' final agreement. *Id.* at 10.

Simply put, Surefil's contentions are not supported by the record before the Court or Surefil's actions in the instant case.  Though Surefil accurately states that both the Quotation and the Order Confirmation were prepared and transmitted by ACMA S.p.A., Surefil fails to note that its own responsive Purchase Order was addressed to ACMA USA.  Comp. Ex. C.  Surefil also made the first of three required installment payments on the ACMA Machine via a check made out and mailed to ACMA USA, not ACMA S.p.A. Comp. Ex. D.  Additionally, when it filed its Counterclaim in this action, Surefil chose to allege that ACMA USA, but not ACMA S.p.A., breached the terms of the parties' purchase contract.  And Surefil has never attempted to join ACMA S.p.A. in this action.

Surefil correctly notes that certain provisions in the "Terms & Conditions" section of the Quotation and Order Confirmation refer to "A.C.M.A. S.p.A., Bologna." Cntrclm. Ex. 1.  But Surefil ignores other pertinent provisions in the "Terms & Conditions" section that refer to ACMA USA. *See Id.* at 12.  The "Release and Exclusion of Warranty" sub-section at issue here references only the "Seller" of the ACMA Machine—it does not mention either ACMA USA or ACMA S.p.A. by name. *Id.* Surefil's actions and the documents exchanged by the parties, however, demonstrate that Surefil had full

11

knowledge that the term "Seller" included ACMA USA at the time of contracting.

Surefil thus was aware that ACMA USA was a party to the contract and a seller of the ACMA Machine when it entered into the parties' agreement. ACMA USA is therefore entitled to rely on the terms of the contract which purport to limit the damages available to Surefil for ACMA USA's breach and to disclaim certain implied warranties.

## B. Counts I and III of Surefil's Counterclaim

Counts I and III[9] of Surefil's Counterclaim aver that ACMA USA breached the parties' contract for the purchase of the ACMA machine and seek damages for "costs for parts and labor for repair and replacement of Machine components, lost production and profits, and other consequential damages." Cntrclm. ¶ 41. ACMA USA now seeks summary judgment on these counts, contending that the parties' agreement contains significant "limitations of the buyer's remedies" such that "most of Surefil's counterclaim contract claims . . . disappear as a matter of law." Pl. Br. at 6-7.

The Federal Rules provide that summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts. . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913 F.2d

---

[9]Count III of the Counterclaim is a claim for "Promissory Estoppel", which Surefil presumably added in case the Court concluded that no valid contract existed.

12

1085, 1087 (4th Cir. 1990) (internal quotations omitted).

### 1. *Validity of Provisions Limiting Surefil's Remedies*

Surefil's Counterclaim seeks "costs for parts and labor for repair and replacement of Machine components, lost production and profits, and other consequential damages." Cntrclm. ¶ 41. However, the "Release and Exclusion of Warranty" provision of the "Terms & Conditions" section of the Quotation provides:

> Customer shall not be entitled to rescission of the contract or reduction of the purchase price under any circumstances. . . . Seller shall not be responsible for any direct, indirect, consequential, economic, special, incidental, or other damages (including production losses or similar economical damages) arising out of any transaction, or for any claim or cause of action whatsoever, except that Seller shall replace or repair parts as specifically set forth above.

Cntrclm. Ex. 1. In its Motion for Partial Summary Judgment on Counts I and III of Surefil's Counterclaim, ACMA USA argues that this language specifically excludes the relief sought by Surefil and limits Surefil's remedies to the replacement and/or repair of defective parts. Surefil responds that summary judgment should be denied because "the circumstances of this case cause ACMA USA's limited remedies to fail of its [sic] essential purpose." Def. Br. at 13.

Michigan's version of the UCC permits a seller to limit a buyer's damages and remedies to "repair and replacement of nonconforming goods and parts." Mich. Comp. Laws. § 440.2719(1)(a). "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose," however, such a limitation is rendered inoperative, and a

buyer may pursue all remedies otherwise available under the UCC. *Id.* § 440.2719(2). Under the UCC, a buyer's limited remedy fails of its essential purpose where, as here, a seller's repairs are " not effective to completely cure the breach and make the machine operate" as intended. *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 264, 281 (E.D.Mich. 1977). Moreover, the "failure of an exclusive remedy provision contained" in a contract also renders any accompanying "limitation of damages provision inoperable" as a matter of law. *Kelynack v. Yamaha Motor Corp., USA*, 394 N.W.2d 17, 21 (Mich. Ct. App. 1986).

Evidence produced by Surefil indicates that the parties have worked together since the ACMA Machines' delivery to remedy numerous problems with the ACMA Machine. *See, e.g.*, Def. Resp. Ex. K.[10] Consistent with its obligations under the contract, ACMA USA has provided parts and service in an attempt to fix the machine. *See, e.g., id.*; *see also* Def. Resp. Ex. L at 160-75.[11] Despite the parties' efforts, the ACMA Machine continues to malfunction, and Surefil represents that ACMA USA is no longer willing to repair the machine or to provide critical replacement parts. *See, e.g.*, Def. Resp. Ex. N at 50-51. Surefil's evidence thus indicates that the company has "exhausted the limited remedy afforded" to it in the parties' agreement—that is, repair and/or replacement by

---

[10]Defendant's Exhibit K is an extensive collection of e-mail messages exchanged among various ACMA USA, ACMA S.p.A., and Surefil personnel describing numerous problems with the ACMA Machine and discussing the parties' efforts to fix it. Exhibit K likewise contains times sheets documenting work performed on the ACMA Machine by the parties.

[11]Defendant has produced deposition testimony from a number of individuals recounting both problems with the ACMA Machine and the parties' unsuccessful efforts to fix it. *See, e.g.*, Def. Resp. Ex. L, I, M.

ACMA USA. *Kelynack,* 394 N.W.2d   at 281-82.

The parties' inability to correct the problems with the ACMA Machine, together with ACMA USA's refusal to provide Surefil with additional assistance, demonstrate that the limited remedy of repair and replacement afforded to Surefil under the parties' contract has failed of its essential purpose.  Because "the repair and replace remedy and the exclusion of consequential damages are integral and interdependent parts of the" disclaimer, *Kelynack,* 394 N.W.2d at 21, the Court concludes that the contract's limitation on consequential damages has failed as well.  Accordingly, the language in the contract limiting Surefil's remedies and excluding consequential damages is inoperative.

2. *ACMA USA's Motion for Partial Summary Judgment on Counts I and III*

To prevail on its Motion for Partial Summary Judgment on Counts I and III of Surefil's Counterclaim, ACMA USA must demonstrate both the absence of any genuine issue of material fact as to those counts and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  ACMA USA, however, cannot satisfy this burden. ACMA USA's sole argument in support of its Motion for Partial Summary Judgment on Counts I and III is that the contract's damages and remedy limitation language clearly precludes the relief sought in Counts I and III.  Because the limited remedy afforded to Surefil under the parties' agreement has failed of its essential purpose, however, the contract's limitation on both remedies and consequential damages are inoperative as a matter of law.  *See Fargo Mach. & Tool Co.,* 428 F.Supp. at 281; *Kelynack,* 394 N.W.2d

at 2. ACMA USA thus cannot demonstrate that it is entitled to judgment as a matter of law on Counts I and III of Surefil's Counterclaim. Accordingly, ACMA USA's Motion for Partial Summary Judgment will be denied as to Counts I and III of the Counterclaim.

### C. Surefil's Motion in Limine and Count VIII of Surefil's Counterclaim

ACMA USA also seeks summary judgment on Count VIII of Surefil's Counterclaim. In Count VIII, Surefil avers that ACMA USA "impliedly warranted that the [ACMA] Machine was of merchantable quality and fit for its intended and ordinary use, and for the general and particular purposes for which it was designed, manufactured . . . and sold." Cntrclm. ¶ 81. Count VIII must fail, ACMA USA contends, because ACMA USA validly disclaimed all implied warranties in the "Terms & Conditions" section of the Quotation.[12] *See* Pl. Br. at 8.

Before ACMA USA filed this Motion for Partial Summary Judgment, Surefil filed its own Motion in Limine To Exclude Evidence Regarding the Purported Waiver of any Warranties. In that motion, Surefil contended that the same warranty disclaimer provision relied upon by ACMA USA was insufficiently conspicuous under the UCC and thus ineffective as a matter of law.[13] Def. Mot. in Lim. at 3. Accordingly, Surefil asked the

---

[12]The relevant disclaimer language reads: "Except for the foregoing express warranties, all equipment is sold 'as is', and all implied warranties, including warranties of merchantability or fitness for a particular purpose, are excluded."

[13]Surefil also argued that the warranty disclaimer provision "inures only to the benefit of ACMA USA's affiliate, ACMA S.p.a., and Italian organization." According to Surefil's argument, ACMA USA thus could not enforce the warranty waiver provision in this case. As discussed above, however, "ACMA USA is . . . entitled to rely on the terms of the contract which purport to limit the damages available to Surefil for ACMA USA's breach and to disclaim certain implied warranties." *See* Section II.B.2., *supra.* Accordingly, this argument of Surefil fails.

Court to "find that [it] has not waived any warranties as they pertain to ACMA USA and

to exclude any evidence relating to the same."[14]   Def. Mot. in. Lim. at 4.

### 1. *Validity of Provisions Waiving Implied Warranties*

Consideration of the parties' respective motions requires the Court to determine

whether language in the parties' contract purporting to disclaim all implied warranties is

enforceable as a matter of law.  Surefil asserts that it is not, arguing that the contract's

warranty disclaimer language was insufficiently conspicuous under Michigan's version of

the UCC because it was not in "larger type than the surrounding text" or "in contrasting

type, font, or color." Def. Mot. in. Lim. at 4. In response (and in support of its own

Motion for Partial Summary Judgment), ACMA USA claims that the UCC's

conspicuousness requirement is satisfied if a purchaser has "actual knowledge" that a

warranty disclaimer is included in a contract.  Pl. Opp. to Mot. in Lim. at 4.

A seller may disclaim the implied warranties of merchantability and fitness for a

particular purpose only via "conspicuous" disclaimer language.  Mich. Comp. Law. §§

440.2314-16.  Michigan's version of the UCC provides that a contract term is

"conspicuous" when " it is so written that a reasonable person against whom it is to

operate ought to have noticed it." Mich. Comp. Law § 440.1201(10).  Examples of

conspicuous language, include a "printed heading in capitals" and language in the body of

---

[14]Surefil has not addressed the validity of the warranty disclaimer in its Response to ACMA USA's Motion for Partial Summary Judgment.  The Court thus assumes that Surefil relies on its early argument in support of its Motion in Limine that the warranty disclaimer provisions are inoperative as a matter of law.

a contract that is "in larger or other contrasting type or color" than surrounding text. *Id.*

Surefil argues in its Motion in Limine that the disclaimer language at issue is not conspicuous because it is "not set aside or differentiated in any way that would draw attention to it." Def. Mot. in Lim. at 4.  Surefil, however, ignores the "printed heading in [all] capitals" and bold typeface that immediately precedes the disclaimer language. This heading is titled: "Release and Exclusion of Warranty." *See* Cntrclm. Ex. 1 at 12.  Thus, the relevant disclaimer language is clearly identified by a decidedly conspicuous heading.

But analysis of the conspicuousness of the warranty disclaimer's text  is ultimately unnecessary. Regardless of its conspicuousness, a warranty disclaimer is fully enforceable when a purchaser has "actual awareness" of the disclaimer, principally because the purchaser's knowledge "obviates any need for conspicuousness in order to prevent surprise." *Fargo Mach. & Tool Co.*, 428 F.Supp. at 372 (applying Michigan law).  This is particularly true when the purchaser is "a sophisticated business buyer experienced in commercial dealings." *Id.*

In support of its Motion for Partial Summary Judgment on Count VIII of Surefil's Counterclaim, ACMA USA has proffered the deposition testimony of Martin Chism, Surefil's "Purchasing Auditor." In his deposition, Chism stated that he "rigorously" reviewed the "Terms & Conditions" section of the Quotation.  Moreover, Chism recalled specifically reviewing the sub-section titled "Release and Exclusion of Warranty" that contains the warranty disclaimer language at issue here. Pl. Br. Ex. A at

18-21. Surefil has tendered no evidence in response.

ACMA USA thus has offered credible evidence from Surefil's own employee indicating that the company had actual knowledge of the relevant warranty disclaimer language. Despite Chism's admissions, Surefil has provided the Court with no basis for concluding that it lacked actual knowledge that the warranty disclaimers were included in the parties' contract. Accordingly, the Court concludes that no genuine issue of material fact exists regarding Surefil's actual knowledge of the warranty disclaimer language contained in the "Terms & Conditions" section of the Quotation and therefore concludes that such language is fully enforceable as a matter of law .

### 2. ACMA USA's Motion for Partial Summary Judgment on Count VIII and Surefil's Motion in Limine

The Court now considers ACMA USA's Motion for Partial Summary Judgment on Count VIII of Surefil's Counterclaim in light of its finding that the contract's warranty disclaimer provisions are enforceable as a matter of law. As discussed above, ACMA USA has demonstrated that no genuine issue of material fact remains regarding Surefil's waiver of implied warranties. There is no dispute that the "Terms & Conditions" section of the Quotation–and its warrant disclaimer language–is a part of the parties' contract. Nor has Surefil produced any evidence to counter ACMA USA's evidence indicating that Surefil had actual knowledge of the warranty disclaimer language. Accordingly, no genuine issue remains as to the applicability, validity, or enforceability of the warranty disclaimer language.

ACMA USA has also fulfilled its burden of demonstrating that it is entitled to judgment as a matter of law on this particular count. Count VIII of Surefil's Counterclaim seeks damages for ACMA USA's breach of the implied warranties of merchantability and fitness for a particular purpose. Cntrclm. ¶ 81. But the warranty disclaimer language clearly provides that "all implied warranties, including warranties of merchantability or fitness for a particular purpose, are excluded." Cntrclm. Ex. 1 at 12. Surefil thus cannot prevail as a matter of law on Count VIII of its Counterclaim.

Because ACMA USA has demonstrated that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the Court will grant its Motion for Partial Summary Judgment on Count VIII of Surefil's Counterclaim. Further, because the relevant warranty disclaimer language contained in the "Terms & Conditions" section of the Quotation is enforceable by ACMA USA as a matter of law, the Court will deny Surefil's Motion in Limine to Exclude Evidence Regarding the Purported Waiver of Any Warranties.

E.  Counts I and III of ACMA USA's Complaint

Plaintiff ACMA USA has also moved for summary judgment on Counts I and III of its complaint, which charge Surefil with breach of contract for failing to pay the second and third installment payments on the ACMA Machine. After obtaining leave of the Court, Surefil filed an Amended Answer in which it averred that it had either rejected or properly revoked its acceptance of the ACMA Machine in September, 2008. ACMA

USA subsequently filed its Motion for Partial Summary Judgment in which it contends that Surefil's rejection and/or revocation of acceptance over 17 months after delivery was legally ineffective.  ACMA USA now argues that it is entitled to summary judgment on Counts I and III of its Complaint because Surefil "failed to timely reject the machine . . . and therefore is deemed to have accepted the machine" as a matter of law and "must pay ACMA according to the contract terms."  Pl. Br. at 13.

Michigan's version of the UCC requires that rejection and revocation of acceptance of goods must occur within a "reasonable time" after delivery of the goods or discovery of a defect.  Mich. Comp. Laws §§ 440.2602(1), 440.2608(2).  However, whether action is taken within a "reasonable time" under Michigan's version of the UCC is largely a factual inquiry that "depends on the nature, purpose, and circumstances of such action."  Mich. Comp. Laws § 440.1204(2).  Michigan law is clear: whether a buyer has accepted or instead rejected goods is ultimately a question of fact that must be determined by the jury.  *Valley Die Cast Corp. v. A.C.W., Inc.*, 181 N.W.2d 303, 308 (Mich. Ct. App. 1970).

The parties do not seem to dispute that Surefil waited over 17 months before notifying ACMA USA that it was either rejecting or revoking its acceptance of the machine.  But the Fourth Circuit has cautioned that summary judgment is not appropriate "even where there is no dispute as to the evidentiary facts but only as to the conclusions to be drawn therefrom."  *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.

1979) (quoting *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951)). Here, there is a dispute as to whether Surefil's admitted 17-month delay rendered its rejection legally ineffective. Under Michigan law, this dispute must be resolved by a jury, not by the Court. *Valley Die Cast Corp.*, 181 N.W.2d at 308.

Whether Surefil's rejection (or revocation of its acceptance) of the ACMA Machine occurred within a "reasonable" time remains a disputed factual issue for a jury to decide. *See Valley Die Cast Corp.*, 181 N.W.2d at 308.[15] This precludes an award of summary judgment in ACMA USA's favor on these counts. *See* Fed. R. Civ. P. 56(c). Accordingly, ACMA USA's Motion for Partial Summary Judgment on Counts I and III of its Complaint is denied.

## IV. Conclusions

For the reasons detailed herein, Plaintiff ACMA USA's Motion for Partial Summary Judgment will be granted-in-part and denied-in-part. ACMA USA's Motion for Partial Summary Judgment on Counts I and III of Surefil's Counterclaim and on Counts I and III of its Complaint will be denied. ACMA's Motion for Partial Summary Judgment on Count VIII of Surefil's Counterclaim will be granted. Finally, Surefil's Motion in Limine to Exclude Evidence Regarding the Purported Waiver of Any Warranties will be denied.

---

[15]Plaintiff fails to cite any authority that would permit this Court to conclude that Surefil's delay in rejecting the machine was unreasonable as a matter of law. ACMA USA even appears to concede as much, writing: "Neither Virginia nor Michigan case law provides any defined period as to what constitutes a 'reasonable time' for a party to reject" goods. Pl. Br. at 21.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this _31st_ day of _Oct_____, 2008.
Richmond, VA