IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ACMA USA, INC.,            )
                           )
       Plaintiff,          )
                           )
v.                         )    Civil Action No. 3:08-CV-071-HEH
                           )
SUREFIL, LLC,              )
                           )
       Defendant.          )

## MEMORANDUM OPINION
(Denying Surefil's Motion for Judgment as a Matter of Law or for a New Trial)

The case presently before the Court involves a dispute regarding the sale of a complicated, custom-built industrial machine by ACMA USA, Inc. and its Italian affiliate, ACMA S.p.A. (collectively, "ACMA"), to Surefil, LLC ("Surefil"). Following a three-day trial, a jury returned a verdict for Plaintiff/Counterclaim Defendant ACMA on all counts and awarded damages of $733,174.28. Defendant/Counterclaim Plaintiff Surefil now renews its previously-submitted Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50. In the alternative, Surefil seeks a new trial under Federal Rule of Civil Procedure 59(a).

The Court is thoroughly familiar with the case at bar and the evidence and testimony adduced at trial. Additionally, both parties have filed detailed memoranda of law in support of their respective positions. The Court thus will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid in the decisional process. For the reasons detailed herein, the

Court will deny Surefil's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (Dkt. 138).

## I. Background

The facts underlying this case were discussed at length in the Court's Memorandum Opinion of October 31, 2008, *See* Mem. Op. at 2-7, and need not be restated here. After ruling on ACMA's Motion for Partial Summary Judgment, the Court conducted a three-day jury trial in this matter in late November of 2008. At trial, both parties called numerous witnesses and introduced voluminous exhibits. At the close of the parties' evidence, the case was submitted to the jury on six separate counts.

### A. Breach of the Sales Contract

In Counts I and III of the Complaint, ACMA alleged that Surefil had breached the parties' contract (the "Sales Contract") for the sale of a complicated, custom-built, filler-and-capper machine (the "Machine") after failing to make two of three required installment payments. The jury also considered Count I of Surefil's Counterclaim, which charged ACMA with breaching the Sales Contract by tendering a faulty Machine that did not conform to the Sales Contract.

Both parties' called multiple witnesses and introduced numerous exhibits to support their claims for breach of the Sales Contract. Testimony offered by Surefil detailed the extensive problems that the company has experienced with the Machine since taking delivery in the spring of 2007. ACMA, in turn, called several witnesses, including ACMA technicians who serviced the Machine, who testified that many of the Machine's problems

2

were attributable to Surefil, not ACMA.

To establish the terms of the Sales Contract, ACMA presented testimony from John Bowerman, ACMA's vice president and general manager, who testified that the Sales Contract did not contain any representations, warranties, or promises regarding the reliability of the Machine's performance. *See* ACMA Mem. Ex. 3. Bowerman's testimony was supplemented in part by William Hunt, the CEO of Surefil himself, whose testimony confirmed that the Machine had been sold to Surefil "as is" and that the Sales Contract contained no reliability guarantees. In fact, Hunt further admitted that Surefil accepted the Sales Contract knowing that its language specifically prohibited withholding payments because of equipment defects. *See* Nov. 20 Tr. at 130-40.

## B. Breach of the Installation Contract

The jury also considered Count II of both the Complaint and Counterclaim, in which Surefil and ACMA each alleged that the other had breached the parties' oral contract for installation of the Machine (the "Installation Contract"). Surefil introduced evidence, including expert testimony, indicating that its problems with the Machine were due, in part, to ACMA's defective installation. ACMA responded with several witnesses whose testimony indicated that the Machine's installation problems and operational irregularities were attributable to Surefil, not ACMA. ACMA also produced evidence demonstrating that Surefil had paid none of $138,406.61 due on the Installation Contract.

## C. Rejection and/or Revocation of Acceptance

Finally, in Count IX of the Counterclaim, Surefil alleged that it properly rejected, or

3

revoked acceptance of, the Machine on September 5, 2008. ACMA, however, presented evidence at trial to refute this claim, including Surefil's signed acceptance of the Machine upon delivery and Surefil's use of the Machine for seventeen months prior to its purported rejection. In response, Surefil produced evidence and testimony demonstrating that the company spent those seventeen months working with ACMA to address numerous problems with the Machine. ACMA's evidence, however, also indicated that Surefil retained the Machine for a full seven months after ACMA suspended its contractual obligations due to Surefil's refusal to make payments under the parties' contracts.

### D. The Jury's Verdict

Following deliberations, the jury returned a verdict for ACMA on both of its breach of contract claims. In addition to rejecting all of Surefil's counterclaims against ACMA, the jury also specifically found, via special verdict form, that Surefil's rejection and/or revocation of acceptance of the Machine were invalid. Accordingly, the jury awarded ACMA damages of $597,767.67–the amount outstanding on the Sales Contract–on Counts I and III of the Complaint and $138,406.61–the amount outstanding on the Installation Contract–on Count II of the Complaint.

## II. Standard of Review

### A. Rule 50(b) Motion for Judgment as a Matter of Law

Notwithstanding the jury's verdict in this case, Surefil now asks the Court to enter judgment as a matter of law in its favor pursuant to Federal Rule of Civil Procedure 50. A district court, however, "may overturn a jury verdict on a motion for [judgment as a matter

4

of law] only if there is no legally sufficient evidentiary basis for a reasonable jury to have found for [the prevailing] party." *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992) (internal quotations omitted).

When considering a post-trial motion for judgment as a matter of law, the Court may neither weigh the evidence nor assess the credibility of witnesses who testified at trial. *Id.* Rather, the Court must view the evidence adduced at trial in the light most favorable to the non-moving party and draw all legitimate inferences in its favor. *See Tools USA and Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654, 656-57 (4th Cir. 1996) (citing *Winant v. Bostic*, 5 F.3d 767, 774 (4th Cir.1993)). The Court, then, is "compelled to accord the utmost respect" to the jury's verdict, and the movant "bears a hefty burden in establishing that the evidence is not sufficient to support the" jury's determination. *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249 (4th Cir. 1996).

### B. Rule 59(c) Motion for a New Trial

In the alternative, Surefil seeks a new trial, which requires the Court to apply a different standard of review. *See Wyatt v. Interstate & Ocean Transport* Co., 623 F.2d 888, 891 (4th Cir. 1980). Under Federal Rule of Civil Procedure 59(a), the Court may order a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys.*

*and Serv., Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996).[1]

When deciding whether a new trial is warranted, "a trial court *may* weigh the evidence and consider the credibility of the witnesses." *Wyatt*, 623 F.2d at 891(emphasis added). Absent "the most exceptional circumstances," however, an appellate court will not review a district's refusal to grant a new trial. *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 168 (4th Cir. 1985). Rather, determination of whether a jury verdict is against the clear weight of the evidence or will result in a miscarriage of justice under Rule 59 is a matter ordinarily committed to the "sound discretion" of the trial court. *Id.*

### III. Analysis

Mindful of the applicable legal standards, the Court now considers whether Surefil is entitled to judgment as a matter of law under Rule 50 or a new trial under Rule 59.

#### A. Surefil's Motion for Judgment as a Matter of Law

Arguing that the jury's verdict on all counts was unsupported by the evidence at trial, Surefil has renewed its Motion for Judgment as a Matter of Law, as it is permitted to do under Rule 50(b). Because this case involved several discrete claims, the Court will address Surefil's Motion with respect to each count separately.

1. *Complaint Counts I and III and Counterclaim Count I: Breach of the Sales Contract*

Surefil first contends that the jury's determination that Surefil–and not ACMA–breached the Sales Contract is "improper as a matter of law" because "there was

---

[1] Surefil does not contend that the jury's verdict was based on false evidence. Accordingly, the Court need not consider this as a basis for ordering a new trial. *See* Surefil Mem. at 2-3.

abundant evidence from both sides that the Machine did not conform to" the Sales Contract. Surefil Mem. at 16. In support of the jury's verdict, ACMA responds that the evidence at trial demonstrated that "Surefil breached all of its contractual obligations" while ACMA tendered "full contract performance." ACMA Mem. at 7.

Contrary to Surefil's contentions, ACMA presented ample evidence at trial indicating that Surefil did not comply with its obligations under the Sales Contract. ACMA's evidence, for example, demonstrated that Surefil failed to provide ACMA with its "facility electrical requirements" and "test materials [and] product samples" by the deadlines specified in the Sales Contract. ACMA Mem. at 7 (citing Pl. Tr. Ex. 10); *see also* Pl. Tr. Ex. 11-13.[2] And, most importantly, Surefil stipulated at trial that it had made only one of three installment payments required by the Sales Contract, resulting in a past-due balance of $597,767.67 as of the date of trial. *See* Written Stip. ¶¶ 5-6.

Surefil did introduce substantial evidence at trial demonstrating that the company had experienced significant operational problems with the Machine's sustained speed, reliability, and maintenance. *See, e.g.*, Def. Tr. Ex. T-V. Surefil's evidence detailed problems with the Machine's "load cells" which, according to Surefil's witnesses, required Surefil to cap bottles by hand and thereby increased personnel costs and decreased production speed. Surefil's evidence also demonstrated several "capper motor failures" as well as "significant problems with [the Machine's] filler" that adversely impacted Surefil's

---

[2]Surefil's actions, ACMA argued, not only breached the terms of the Sales Contract but also contributed to any subsequent problems that Surefil experienced with the Machine because ACMA was unable to test the machine properly before delivery.

7

production performance. Surefil Mem. at 10. These problems, Surefil contended, constituted a breach of contract by ACMA because the Machine did not conform to the contract specifications.

ACMA, however, countered by offering evidence from which a reasonable jury could rationally conclude that any problems with the Machine were attributable to Surefil, not ACMA, and therefore did not constitute a breach of the Sales Contract. For example, both Thomas Hench, an ACMA technician who installed the machine, and Martin Chism, a former Surefil employee who conducted performance studies on the Machine, testified that other unrelated problems on Surefil's production line had likely contributed to Surefil's difficulties. Nov. 20 Tr. at 18; *see also* Nov. 19 Tr. at 152-159. Hench also testified that Surefil placed the Machine into production without properly installing several critical components, contrary to ACMA's recommendations. See Nov. 20 Tr. at 15-43.

Hench's testimony also provided the jury with a basis for concluding that the problems relating to the speed of the machine had nothing to do with an internal defect, but were in fact caused by other Surefil line equipment auxiliary to the Machine. *See* Nov. 20 Tr. at 18, 38. Additionally, Hench testified that his inspections of the Machine revealed misaligned components, insufficient cleaning, and worn out parts that needed replacement, indicating that Surefil failed to maintain the Machine properly. *See* Nov. 20 Tr. at 20-41. Hench's testimony was supported by Emanuele Saccani, another ACMA technician, who indicated that he had noticed similar problems during his inspection of the Machine while visiting the Surefil facility. *See* Nov. 19 Tr. at 91-97.

Although both parties introduced credible evidence at trial in support of their breach of contract claims, the Court may enter judgment as a matter of law in favor of Surefil only if there is "no legally sufficient evidentiary basis for a reasonable jury to have found for" ACMA. *Anheuser-Busch*, 962 F.2d at 318. Because ACMA introduced sufficient evidence for the jury to conclude that Surefil, and not ACMA, breached the Sales Contract, Surefil's Motion for Judgment as a Matter of Law on Complaint Counts I and III and Counterclaim Count I must fail.

2. *Complaint Count II and Counterclaim Count II: Breach of the Installation Contract*

Surefil also challenges the jury's determination that Surefil, not ACMA, breached the parties' Installation Contract. Specifically, Surefil argues that no reasonable jury could have possibly found that ACMA did not breach the Installation Contract because of the operational problems Surefil has experienced with the Machine since installation. Surefil Mem. at 17.

Surefil's evidence at trial unquestionably detailed numerous problems with the operation of the Machine since its installation in April of 2007. During ACMA's installation of the Machine, for example, problems with a "filling head," "cap sorter" and "camera system," among others, apparently prevented the Machine from being "commissioned" immediately. *See, e.g.* Nov. 20 Tr. at 82-83, 88-89; Def. Tr. Ex. DD. Moreover, Surefil also presented expert testimony suggesting that the Machine's current problems may have been attributable, at least in part, to ACMA's defective installation. *See* Nov. 20 Tr. at 157-158.

ACMA, in turn, presented substantial evidence indicating that problems with the Machine's installation were caused by Surefil's interference with the installation process, not ACMA's defective performance. According to the testimony by ACMA's installers, Surefil denied ACMA adequate time to install the Machine by "insist[ing] on immediate production" before the Machine was ready for commercial operation. ACMA Mem. at 8 (citing Nov. 20 Tr. at 14). ACMA's evidence also indicated that Surefil's need for continued operation prevented ACMA from making necessary adjustments to the Machine in September of 2007. *Id.* at 38. Further, ACMA presented testimony from ACMA technicians indicating that Surefil ignored ACMA's installation instructions and suggestions for improved production performance. *See Id.* at 16-17, 43.

Both parties presented plausible evidence regarding their respective claims for breach of the Installation Contract. But ACMA's evidence, coupled with Surefil's admitted failure to pay $138,406.61 due under the Installation Contract, provided the jury with a sufficient basis for concluding that Surefil, but not ACMA, had breached the Installation Contract. Accordingly, Surefil's Motion for Judgment as a Matter of Law must be denied as to Count II of the Complaint and Counterclaim.

3. *Counterclaim Count IX: Surefil's Rejection and/or Revocation of Acceptance*

At the conclusion of the trial, the jury specifically found, via special verdict form, that Surefil had neither validly rejected nor properly revoked its acceptance of the Machine. Surefil now contends, however, that the jury "should have found that Surefil properly rejected–or revoked its acceptance of–the Machine" because "any evidence to the contrary

was insufficient as a matter of law to support the jury's verdict." Surefil Mem at 17. The Court disagrees.

Contrary to Surefil's contentions, the record in this case reveals ample evidence to support the jury's determination that Surefil neither validly rejected nor revoked its acceptance of the Machine. Surefil could only reject (or revoke its acceptance of) the Machine if ACMA's construction of the Machine did not conform to the parties' contract. *See* Mich. Comp. Laws §§ 440.2601(a), 440.2608. As discussed previously, however, the evidence at trial was sufficient for the jury to conclude that ACMA did not breach the Sales Contract. *See* Section III.A.1-2, *supra*. Accordingly, the jury properly concluded that Surefil's attempted rejection and revocation of acceptance were legally ineffectual.

There was also sufficient evidence presented at trial from which the jury could conclude that Surefil did not reject or revoke its acceptance of the Machine within a reasonable time. Michigan's version of the UCC[3] further requires that a purchaser's rejection and/or revocation of acceptance occur within a "reasonable time" after delivery or discovery of a defect. Mich. Comp. Laws §§ 440.2602(1), 440.2608(2). Whether rejection or revocation occurs within a "reasonable time" is largely a factual inquiry that "depends on the nature, purpose, and circumstances of such action." Mich. Comp. Laws § 440.1204(2). Moreover, Michigan law is straightforward: whether a buyer has accepted or instead rejected goods within a reasonable time is ultimately a question of fact that must be

---

[3]The parties have agreed that Michigan law governs this case. *See* Written Stipulations at 1.

determined by the jury. *Valley Die Cast Corp. v. A.C.W., Inc.*, 181 N.W.2d 303, 308 (Mich. Ct. App. 1970).[4]

Trial revealed that the Machine was delivered in the Spring of 2007, but Surefil did not notify ACMA of its rejection/revocation until September of 2008, a delay of approximately a year and a half.[5] Both parties' evidence also indicated that Surefil experienced numerous problems with the Machine during this interval. Although the parties' made a concerted effort to repair the machine for nearly a year, Surefil itself asserts that ACMA refused to provide any assistance after March of 2008, nearly six months before Surefil rejected the Machine. In fact, ACMA instituted the present action even earlier–in January of 2008–after Surefil failed to make payments due on the Machine. From these facts, the jury had a sufficient evidentiary basis to conclude that Surefil's rejection or revocation of acceptance should have come much earlier than September of 2008 and was therefore not done within a reasonable time under Michigan's version of the UCC.

This Court may overturn the jury's verdict under Rule 50 only if it finds "no legally sufficient evidentiary basis for a reasonable jury to have found for" ACMA on Count IX of the Counterclaim. *Anheuser-Busch*, 962 F.2d at 318. Here, the jury had at least two valid

---

[4] In fact, Surefil itself argued forcefully in favor of reserving these issues for determination by a jury when opposing ACMA's earlier Motion for Summary Judgment on Count IX of the Counterclaim.

[5] In support of its Motion, Surefil cites numerous cases from various jurisdictions that approved of rejection and/or revocation of acceptance after considerable periods of delay. Because the timeliness of a rejection or revocation of acceptance "depends on the nature, purpose, and circumstances of such action," however, whether an extended delay is reasonable under the UCC necessarily varies from case to case. Mich. Comp. Laws § 440.1204(2). The Court therefore finds the cases cited by Surefil unpersuasive.

and well-supported bases for rejecting Surefil's claim. Accordingly, Surefil's post-verdict Motion for Judgment as a Matter of Law on Count IX of its Counterclaim must be denied as well.

### B. Surefil's Motion for a New Trial

Suggesting that this case was perhaps "too intricate or complicated" for the jury, Surefil alternatively seeks a new trial under Rule 59(a). Surefil contends that the jury's verdict was "counter to the clear weight of the evidence" and "resulted in a serious miscarriage of justice" because "no reasonable juror could have concluded that the Machine was not defective." Surefil Mem. at 23 (internal quotations omitted).

The Court acknowledges that this was an intricate, complicated case that required the jury to digest a substantial amount of technical evidence. Both sides presented credible evidence suggesting that the other breached the parties' contracts. After considering all the testimony and exhibits, however, the jury determined by a preponderance of the evidence that Surefil, not ACMA, was at fault. Technical though the evidence may be, a second jury would be in no better position than the first to assess each parties' case. Accordingly, Surefil's Motion for a New Trial is denied as well.

### IV. Conclusions

Although this case involved a considerable amount of complicated, technical evidence, it was, at base, a breach of contract dispute. After hearing the parties' evidence and counsels' argument over three days of trial, the jury simply found that Surefil breached the parties' contracts and ACMA did not. This verdict was supported by the parties'

13


evidence. Canvassing the trial record and considering the parties' post-trial arguments, this Court can find no basis for disturbing the jury's considered verdict in this case. Accordingly, Defendant/Counterclaim Plaintiff Surefil's Motion for Judgment as a Matter of Law or, In the Alternative, for a New Trial must be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                              /s/
                                          Henry E. Hudson
                                          United States District Judge

ENTERED this 9th day of Feb, 2008.
Richmond, VA